## In re SUNDERLAND.
### Patent Appeal No. 3224.

Court of Customs and Patent Appeals.
March 5, 1934.

Cleon J. Sawyer, of New York City, for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

There are here upon appeal from a decision of the Board of Appeals of the United States Patent Office five claims (Nos. 1, 6, 9, 10, and 11) of appellant's application for patent, entitled, broadly, "Wire Connections." As to certain other claims also rejected by the tribunals of the Patent Office no appeal was taken.

Claims 1 and 9 are selected as being representative:

"1. A method of connecting the ends of two wires which comprises providing the wire ends with oppositely directed screw threads, drawing the threaded ends into abutment by an internally threaded sleeve, and swaging the sleeve into close contact with the threaded portions of the wire ends."

"9. A connection for the ends of two wires comprising oppositely directed screw threaded enlargements on the wire ends, and a correspondingly internally threaded sleeve screwed on the threaded enlargements and compressed into close contact with the threaded portions of the wire ends and the wires beyond the threaded enlargements."

The references cited by the Examiner upon which the rejection by him was based are: Luehrs, 194875, September 4, 1877; McTighe, 650862, June 5, 1900; Des Isles, 1438751, December 12, 1922; Stecke, 1642314, September 13, 1927; Conner, 1643150, September 20, 1927.

Of these references the decision of the Board of Appeals refers specifically only to Stecke, but all are named in its opinion. The Examiner's rejection seems to have been based largely upon Des Isles, in view of either Stecke, McTighe, or Conner, and his rejection was broadly affirmed by the Board.

The claims themselves are so clear as to require little interpretation. The brief for appellant states that the claimed invention is especially intended for connecting the ends of wires such as are used in spinning the parallel laid cables of suspension bridges; it being necessary, in making such cables, to connect long lengths of wire, which bear heavy strain, so as to produce a continuous length of wire spun in many successive layers.

For this purpose the ends of the respective wires which are to abut are provided with oppositely rolled threads, which threads screw into an internally threaded sleeve or nipple. By means of this nipple the wire ends are drawn into abutment, the wires themselves being drawn to the degree of tautness required. After being so adjusted, the nipple is compressed or swaged into close contact with the threaded wire ends, thus forming a connection or joint suited to the art in which it is employed.

Certain of the claims, for example No. 9, supra, have limitations defining screw-threaded enlargements on, or of, the wire ends with a proper internal threading of the sleeve or nipple, by means of which the nipple covers the enlarged ends and extends beyond such ends a sufficient distance upon the wire to make, when swaged, a tight and stable joint or connection.

It is not deemed necessary here to detail or itemize the disclosures of the several references. It is conceded that prior to appellant's claimed invention the art disclosed the drawing of the ends of oppositely threaded wires into abutment by the use of internally threaded nipples or sleeves—"preferably into locked abutment," says the brief for appellant, "to prevent relative rotation by providing the wires with mitred ends."

Stecke, McTighe, and Conner all show compression of sleeves upon wires to make a tight joint. It is argued, however, that they do not teach the making of the joints so to be swaged by the use of oppositely threaded wire ends screwed into internally threaded nipples.

Thus we have this situation: Appellant had before him at the time he entered the field the teaching of drawing threaded wire ends together by the use of an internally threaded nipple, but, let it be conceded, without swaging to make a tight joint. From other sources he had before him the teaching of making a tight joint by swaging the nipple upon, let us say, unthreaded wire ends abutting within the nipple. Did it involve invention for appellant to combine these two distinctly taught things?

We cannot think so.

Of course, we have the accustomed—and, it may be said, entirely legitimate—argument that no one had ever done it before and that appellant has made a distinct advance in this important field. That may be granted, but it still does not seem to us to indicate any originality in conception which may be held to mount to the dignity of invention.

Claim No. 11, it may be stated, has a limitation of "rolled screw threads." Luehrs ad-

mittedly teaches the making of threads by rolling.

Others of the claims (No. 9, supra, for example) have the limitation of threaded enlarged wire ends, with sleeve internally threaded and formed to be fitted upon such enlarged wire ends. No reference seems to show the use of enlarged wire ends. The Board of Appeals held this feature to be devoid of invention "for the reasons stated by the Examiner" and without any independent discussion of same. The Examiner in referring to this limitation said: " * * * This difference is considered as being one of degree only, and therefore not a patentable difference."

Careful consideration has been given to appellant's arguments relative to this feature with the result that we discern no error in this holding.

The drawings indicate that in applying this limitation, the wire ends are enlarged sufficiently to enable the making of threads thereon and leave the diameter of the wire, measured from the bottom of the thread groove, the same as the diameter of the wire back of the threaded portion. This doubtless results in the wires, at the point where the joint is formed, being stronger than if the threaded parts were of the same diameter at the outer edges of the threads as the wire back of the threaded portion, but, so far as the locking effect produced by the juncture of the internally threaded nipple with the threads of the wires is concerned, that, as was said by the Examiner, seems to us to be merely a matter of degree, and, as stated by the Board of Appeals, does not involve invention.

We find no error in the decision of the Board of Appeals, and the same is affirmed.

Affirmed.